UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-62160-BLOOM/Valle

RUBY GREEN,

    Plaintiff,

v.

HOWARD L. FINKELSTEIN, *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon two Motions filed by the named Defendants in this case.[1] *See* ECF Nos. [17] & [19] (collectively, the "Motions"). Howard Finkelstein, in his official capacity as the Broward County Public Defender ("Public Defender"), and the Office of the Public Defender for Broward County ("Public Defender's Office") (collectively, "Official Defendants") filed a Motion to Dismiss Complaint and Motion to Strike Plaintiff's Claim for Punitive Damages. ECF No. [17]. Additionally, Howard Finkelstein, in his individual capacity ("Defendant Finkelstein"), filed a Motion to Dismiss Complaint, ECF No. [19].[2] The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motions are denied.

---

[1] Plaintiff Ruby Green ("Green") brings this action against Howard Finkelstein, both individually and in his capacity as Public Defender for Broward County, and against the Office of the Public Defender for Broward County. *See* ECF No. [1].

[2] The Public Defender's Office, the Public Defender, and Defendant Finkelstein are collectively referred to as "Defendants."

Case No. 20-cv-62160-BLOOM/Valle

## I. BACKGROUND

On October 23, 2020, Green initiated this action against Defendants alleging claims of First Amendment retaliation under 42 U.S.C. § 1983. *See* ECF No. [1]. According to the Complaint, Green was previously employed as an assistant public defender for Broward County. *Id.* ¶¶ 2, 5. During her employment with the Public Defender's Office, Green campaigned for public office to replace the retiring Public Defender, Defendant Finkelstein. *Id.* ¶¶ 2, 6. Green contends that during her employment and while campaigning for office, she was actively engaged in speaking about "social justice issues." *Id.* ¶ 7. Specifically, Green publicly advanced her position on the "equitable treatment of African American participants in the criminal justice system" by engaging the community at large and participating in podcasts. *Id.* ¶¶ 7, 10, 16. The morning after her unsuccessful election, Green received an e-mail and text message notifying Green of her termination. *Id.* ¶ 8. That same morning, Defendant Finkelstein participated in an interview with the South Florida Sun Sentinel, during which Defendant Finkelstein purportedly "admitted" to the reporter that he personally made the decision to terminate Green, and that his decision was based on the statements Green made during her campaign for public office. *Id.* Accordingly, the Complaint asserts two counts for relief: (1) First Amendment Retaliation against Defendant Finkelstein; and (2) First Amendment Retaliation against the Official Defendants.

On December 14, 2020, and December 16, 2020, Defendants filed their respective Motions. *See* ECF Nos. [17] & [19]. Defendants argue that Green fails to state a plausible claim for First Amendment retaliation because the Complaint is devoid of any facts or substantive allegations concerning her protected speech.[3] Additionally, the Official Defendants move to strike Green's

---

[3] Because Defendants raise the same, if not identical, legal arguments, the Court considers them together.

2

claim for punitive damages. Green timely filed a Response to each Motion, *see* ECF Nos. [21] & [22], and Defendants subsequently filed their respective Replies, *see* ECF Nos. [25] & [26].

The Motions, accordingly, are ripe for consideration.

## II. LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

A court, in considering a Rule 12(b)(6) motion, "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

## III. DISCUSSION

### A. First Amendment Retaliation

The crux of Green's claims is that she was terminated by Defendants in retaliation for her public statements on social justice issues, and that this retaliatory termination violated her First Amendment rights. In the Motions, Defendants first seek dismissal of the Complaint on the grounds that, absent Green specifically pleading *what* she said, *when* she said it, and *to whom* she was speaking, she cannot establish that the speech for which she was terminated was constitutionally protected. ECF No. [17] at 6; ECF No. [19] at 8. Stated differently, Defendants suggest that the Complaint must "set forth [Green's] *actual words*." ECF No. [25] at 3-4; ECF No. [26] at 2-3. However, the Court's analysis under § 1983 is guided by Rule 8(a)(2), and not a heightened pleading standard. *See Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard."). It is through the lens of Rule 8(a)(2) that the Court considers the Motions and the parties' arguments.

"A government employer may not demote or discharge a public employee in retaliation for speech protected by the First Amendment." *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015) (citing *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989)). While it is true that a citizen who enters public service "must accept certain limitations on his or her freedom[,] . . . [t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006) (citing *Waters v. Churchill*, 511 U.S. 661, 671 (1994); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)); *see also Lane v. Franks*, 573 U.S. 228, 236 (2014) ("public employees do not renounce their citizenship when they accept employment, and [the Supreme Court] has cautioned time and again that public employers may not condition employment on the relinquishment of constitutional rights" (citations omitted)). Thus, in the First Amendment context, courts must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968); *see also Garcetti*, 547 U.S. at 418 (the *Pickering* balancing test "reflects the importance of the relationship between the speaker's expressions and employment. A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations.").

The Court of Appeals for the Eleventh Circuit has set forth a four-part inquiry to determine whether an employer's actions constitute retaliation for protected speech in violation of the First Amendment: (1) whether the employee's speech involves a matter of public concern; (2) whether

5

the employee's interest in commenting upon matters of public concern outweighs the employer's legitimate interest in promoting the efficiency of public service it performs through its employees; (3) whether the employee's speech played a substantial or motivating factor in the employer's decision to demote or discharge the employee; and (4) whether the employer would have taken the same action against the employee even in the absence of the protected speech. *See Bryson*, 888 F.2d at 1565-66. "The first two steps are questions of law; the final two steps are 'questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech.'" *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005) (quoting *Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1219-20 (11th Cir. 2001)).

To state a claim for First Amendment retaliation, a government employee must allege facts showing: "(1) [she] engaged in speech or an act that was constitutionally protected,[4] (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

---

[4] The Court's inquiry into whether a plaintiff has sufficiently alleged that her speech deserves constitutional protection falls under the first two prongs of the *Bryson* test. As stated in *Garcetti*, there are two inquiries that guide the interpretation of constitutional protections accorded to public officials:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. . . . If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. . . . If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti*, 547 U.S. at 418 (citations omitted).

### 1. Constitutionally Protected Speech

The threshold issue before the Court is whether Green's speech is constitutionally protected. In order to receive protection under the First Amendment, an employee's speech must be "fairly characterized as constituting speech on a matter of public concern." *Bryson*, 888 F.2d at 1565 (citations omitted). "To fall within the realm of the 'public concern,' an employee's speech must relate to a matter of political, social, or other concern to the community." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (alterations omitted) (quoting *Connick v. Meyers*, 461 U.S. 138, 146 (1983)); *see also Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007) (per curiam) ("Deciding whether a government employee's speech relates to his or her job as opposed to an issue of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." (citations omitted)). "Absent extraordinary circumstances, however, First Amendment protection remains unavailable when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest." *Morgan*, 6 F.3d at 754 (citation omitted) (alterations omitted); *see also Alves*, 804 F.3d at 1160 (finding that employees speaking on matters of personal interest were not entitled to First Amendment protection).

Defendants do not specifically challenge whether Green's speech warrants constitutional protection, but instead claim that the Complaint is "vague[,]" "conclusory[,]" and "wholly devoid of specific facts related to [Green's] alleged speech." ECF No. [17] at 6-7; *see also* ECF No. [19] at 6. Defendants' characterization of the Complaint is inaccurate. Rather, according to the Complaint, while campaigning for public office, Green "initiat[ed] robust dialogue" to "the community-at-large" on social justice issues, such as the "equitable treatment of African American participants in the criminal justice system." ECF No. [1] ¶¶ 7, 10. Green further alleges that

7

Defendant Finkelstein purportedly "took issue" with her statements, which "were made completely outside the scope of [Green's] employment," and consequently terminated Green the "morning following" her election loss. *Id.* ¶¶ 8, 10.

Thus, the allegations in the Complaint sufficiently indicate that Green seeks constitutional protection for her public statements regarding social justice issues. Further, while Green improperly attempts to allege additional facts in her Responses to the Motions, the Court finds that Plaintiff's Complaint, as currently pled, can withstand scrutiny at the dismissal stage. *See Wennersten v. Commercial Diver Servs., N.A. Inc.*, No. 12-60975-CIV, 2012 WL 3230419, at *1 n.1 (S.D. Fla. Aug. 6, 2012) (a plaintiff "may not amend his complaint through new allegations raised when responding to a motion to dismiss." (citations omitted)).

Taking the well-pleaded factual allegations as true, and drawing all reasonable inferences in Green's favor, the Court finds that the Complaint sufficiently alleges facts to support Green's claim of retaliation for engaging in constitutionally protected speech. First, Green's alleges that her statements did not derive from her professional responsibilities as assistant public defender, but rather from her campaign for public office. *See Lane*, 573 U.S. at 240 ("the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech"); *see also Briggs v. Potter Cnty.*, 787 F. App'x 123, 129 (3d Cir. 2019) ("statements [] made in the context of a political campaign, [are] necessarily a function of one's actions as a citizen"). Second, Green's statements on social justice issues necessarily implicate a matter of public concern. *See Boyce*, 510 F.3d at 1344 ("The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the [the plaintiff's] speech was to raise issues of public concern." (citations omitted) (alterations omitted)); *see also Belyeu v. Coosa Cnty. Bd. of Educ.*,

998 F.2d 925, 929 (11th Cir. 1993) ("society possesses a compelling interest in the unrestrained discussion of racial problems" (citing *Leonard v. City of Columbus*, 705 F.2d 1299, 1304-05 (11th Cir. 1983) (holding that speech of state employees regarding racially discriminatory practices in the police force "concerned not only internal police matters, but matters of interest to the community-at-large as well"))).

The next step in the First Amendment analysis requires the Court to evaluate the *Pickering* balancing test, and determine whether Defendants had adequate justification for treating Green differently from any other member of the general public. *See Pickering*, 391 U.S. at 568. In resolving the *Pickering* balance, the Eleventh Circuit has instructed courts to consider the following factors in determining the government-employer's interest in efficient provision of public services: "(1) whether the *speech at issue* impedes the government's ability to perform its duties efficiently, (2) the manner, time and place of the speech, and (3) the context within which the speech was made." *Bryson*, 888 F.2d at 1567 (emphasis in original) (citation omitted); *see also Morris v. Crow*, 117 F.3d 449, 457-58 (11th Cir. 1997) ("One relevant consideration is whether the speech at issue 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the [public employer's] enterprise.'" (alteration in original) (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987))).

On Green's side of the *Pickering* balance is her interest in speaking as a citizen on a matter of public concern. *See Connick*, 461 U.S. at 145 (speech that touches on a matter of public concern "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" (citation omitted)); *see also Garcetti*, 547 U.S. at 420 ("Were [public employees] not

9

able to speak on [the operation of their employers], the community would be deprived of informed opinions on important public issues. The interest at stake is as much the public's interest in receiving informed opinions as it is the employee's own right to disseminate it." (alterations in original) (quoting *San Diego v. Roe*, 543 U.S. 77, 82 (2004) (per curiam))).

On Defendants' side of the *Pickering* balance is the "need to maintain loyalty, discipline and good working relationships among those [they] supervise[.]" *Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1324 (11th Cir. 1989). Although Defendant Finkelstein maintains that the decision to terminate Green resulted from her "unprofessional conduct," ECF No. [19] at 14, Defendants fail to include any argument regarding the nature of the unprofessional conduct. Unsurprisingly, the Complaint is also devoid of allegations suggesting that Defendants had a countervailing interest in limiting Green's speech. Accordingly, the Court finds that the *Pickering* balance weighs more heavily in favor of Green.

### 2. Adverse Effect on Speech

To plead a *prima facie* case of First Amendment retaliation, Green must also allege that Defendants' retaliatory conduct adversely affects protected speech. Defendants maintain that the Complaint should be dismissed because "[a]t no time does [Green] allege that *her* First Amendment rights were inhibited." ECF No. [17] at 9 (emphasis added); ECF No. [19] at 8. This argument, however, disregards the appropriate objective standard—namely, whether "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254.

According to the Complaint, as a result of Defendants' retaliatory termination, Green suffered "lost wages, benefits, and other tangible damages," as well as "emotional pain and suffering damages, loss of the capacity for the enjoyment of life, and other intangible damages."

ECF No. [1] ¶¶ 24, 40. These allegations sufficiently allege that Defendants' actions would likely deter a person of ordinary firmness from engaging in public speech on a matter of public concern.

Interestingly, the same unsuccessful argument was raised by Defendant Finkelstein in a prior First Amendment retaliation action brought against him in this District. *See generally Brannon v. Finkelstein*, No. 10-61813-CIV, 2011 WL 13113270, at *1 (S.D. Fla. Oct. 3, 2011). Although *Brannon* involved circumstances that are somewhat different from the facts alleged here, the legal standard remains the same. *See id.* at *3-4 ("It matters not whether the retaliation actually chilled the plaintiff's speech" because "the appropriate standard . . . is objective, not subjective (citing *Bennett*, 423 F.3d at 1251)).

### 3. Causal Connection

Lastly, the Complaint sufficiently alleges a causal link between Green's protected speech and her subsequent termination. Green contends that the "morning following" her election loss and notice of termination, Defendant Finkelstein participated in an interview with the South Florida Sun Sentinel and "admitted" to the reporter that: (1) "[he] personally made the decision to terminate" Green; and (2) "that the decision to terminate [Green was] based on statements and/or speech that she had made during her campaign for the Public Defender's Office." ECF No. [1] ¶ 8. Despite these well-pled allegations, Defendants nonetheless argue that the Complaint fails to properly allege retaliatory motive. Yet again, Defendants' arguments on this point ignore this Court's and "the Eleventh Circuit's dictate that whether the speech was a substantial or motivating factor in the retaliation is generally a question of fact for the jury." *Brannon*, 2011 WL 13113270, at *4 (citing *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998)).

For the foregoing reasons, the Court concludes that Green has stated a plausible claim for First Amendment retaliation against both the Official Defendants and Defendant Finkelstein.

### B. Qualified Immunity

Defendant Finkelstein, in his individual Motion, argues that even if Green has stated a plausible cause of action for First Amendment retaliation, he is nonetheless entitled to qualified immunity because he has not violated a clearly established right. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 (11th Cir. 2004) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)); *see also Storck v. City of Coral Springs*, 354 F.3d 1307, 1313 (11th Cir. 2003). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The qualified immunity doctrine therefore represents "a balance between the need for a remedy to protect citizens' rights and the need for government officials to perform their duties without the fear of constant, baseless litigation." *Kingsland*, 382 F.3d at 1231 (citation omitted). Accordingly, "[q]ualified immunity is, as the term implies, qualified. It is not absolute." *Id.* at 1233.

"Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). To prevail on a motion to dismiss based on qualified immunity, "the public official must first prove that he was acting within the scope of his

discretionary authority when the allegedly unconstitutional acts took place." *Storck*, 354 F.3d at 1314 (citing *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)).

"A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties; and (2) within the scope of his authority." *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1144 (11th Cir. 2017) (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995)). "In applying each prong of this test, [courts] look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). "In other words, 'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Mikko*, 857 F.3d at 1144 (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "Once the public official has established that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity does not apply." *Storck*, 354 F.3d at 1314 (citing *Lee*, 284 F.3d at 1194).

Here, Green does not dispute that Defendant Finkelstein was acting within the scope of his discretionary authority as the Broward County Public Defender when he terminated Green. Thus, because Defendant Finkelstein has satisfied the discretionary authority requirement, the burden now shifts to Green to establish that qualified immunity is inapplicable here.

The United States Supreme Court has outlined a two-part test to determine whether a plaintiff can meet its burden of rebutting a qualified immunity defense. First, the court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194,

201 (2001). Second, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." *Id.* Courts "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 951 (11th Cir. 2019) (citing *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Moreover, "only Supreme Court cases, Eleventh Circuit caselaw, and [Florida] Supreme Court caselaw can 'clearly establish' law in this circuit." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) (citing *Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.1 (11th Cir. 1996)). The essence of this inquiry is the "public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland*, 382 F.3d at 1231-32 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Lee*, 284 F.3d at 1195). "To be clearly established, the contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). Indeed, "in the light of pre-existing law, the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "Qualified immunity 'gives ample room for mistaken judgments' but does not protect 'the plainly incompetent or those who knowingly violate the law.'" *Kingsland*, 382 F.3d at 1231-32 (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Nonetheless, "[t]he Supreme Court and [the Eleventh Circuit] have stated that a plaintiff cannot strip a § 1983 defendant of his qualified immunity by citing to general rules or abstract rights." *Jones*, 174 F.3d at 1282 (citing *Anderson*, 483 U.S. at 639); *see also Walker v. Schwalbe*, 112 F.3d 1127, 1132 (11th Cir. 1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified

14

immunity focuses on the actual, specific details of concrete cases." *Walker*, 112 F.3d at 1132. Indeed, "'clearly established law' should not be defined 'at a high level of generality'" but "must be 'particularized' to the facts of the case" because otherwise, "'[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citations omitted).

Here, the constitutional right at issue is Green's ability to be free from retaliation in her public employment for engaging in speech on matters of public concern. "The [Supreme Court] has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417 (citations omitted); *see also Travers v. Jones*, 323 F.3d 1294, 1295 (11th Cir. 2003) ("The law is clearly established that an employer may not demote or discharge a public employee for engaging in protected speech." (citations omitted)); *Carollo v. Boria*, 833 F.3d 1322, 1334 (11th Cir. 2016) ("reasonable public officials would have known at the time of [plaintiff's] termination that it violated the First Amendment to terminate a colleague for speaking about matters of public concern that are outside the scope of his ordinary job responsibilities").

Defendant Finkelstein cites to Eleventh Circuit case law stating that "[b]ecause no bright-line standard puts the reasonable public employer on notice of a constitutional violation, the employer is entitled to immunity except in the extraordinary case where *Pickering* balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland*, 866 F.2d at 1323. Here, however, Plaintiff alleges that Defendant Finkelstein "admitted" to terminating Green's employment in retaliation for her campaign speech on social justice issues, ECF No. [1]

15

¶ 8, and, as addressed above, the Court is unable to infer any lawful conduct of the Defendant based on the Complaint's allegations.[5] Taking Green's allegations as true, Defendant Finkelstein's actions were a clear violation of the First Amendment. *See Chesser v. Sparks*, 248 F.3d 1117, 1122 (11th Cir. 2001) ("It is axiomatic that a state may not demote or discharge a public employee in retaliation for protected speech." (citations omitted) (alterations omitted). Additionally, there is no authority that could lead Defendant Finkelstein, or any reasonable public employer, to believe that the acts in question were constitutional. "While previous cases need not have fundamentally similar facts, the question is whether a government official has fair warning that his actions are unconstitutional." *Brannon*, 2011 WL 13113270, at *7 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The Court finds that a reasonable public official in Defendant Finkelstein's position would have known at the time of Green's termination that terminating an employee for speaking about matters of public concern that are outside the scope of her ordinary job responsibilities would violate the First Amendment.

Accordingly, upon review of Green's Complaint, and in light of the current stage of these proceedings, the Court concludes that Defendant Finkelstein is not entitled to the protections of qualified immunity.

### C. Injunctive Relief

The Official Defendants also contend that Green has insufficiently pled her request for injunctive relief. "In order to obtain a preliminary injunction, [a] [p]laintiff must establish the

---

[5] Defendant Finkelstein also suggests that because a public defender has the statutory authority to fire with or without cause, he could not have known that the "administrative decision" to terminate Green could lead to a violation of her First Amendment rights. ECF No. [19] at 16. This argument, however, is without merit and contradicts the express purpose of § 1983. *See Wyatt v. Cole* 504 U.S. 158, 180 (1992) (Rehnquist, J., dissenting) ("[Section] 1983's historic purpose was 'to prevent *state officials* from using the cloak of their authority under state law to violate rights protected against state infringement.'" (emphasis in original) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 948 (1982))).

following four elements: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to [p]laintiff outweighs the threatened harm the injunction may do to [d]efendants; and (4) granting the preliminary injunction will not disserve the public interest." *It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1330 (S.D. Fla. 2013) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)). "Because a 'preliminary injunction is an extraordinary and drastic remedy,' it is 'not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites.'" *Id.* (quoting *Church*, 30 F.3d at 1342); *see also Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

At the motion to dismiss stage, Green does not need to establish each of the elements listed above. Instead, Green must only plead factual allegations "sufficient to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Official Defendants argue only that Green's claim for injunctive relief fails to allege "any facts that demonstrate 'imminent' future harm to her rights under the First Amendment." ECF No. [17] at 12. Yet, according to the Complaint, Defendants terminated Green in retaliation for her statements made while campaigning for public office. As such, Green's alleged injury is the retaliatory action she faced in violation of her First Amendment rights, and this injury is ongoing and will continue indefinitely absent reinstatement. ECF No. [1] ¶ (d); *see also Khan v. Rundle*, No. 05-23123-CIV, 2006 WL 8433478, at *11 (S.D. Fla. Mar. 2, 2006) (finding that plaintiff's inability to work at his former job constitutes a "future injury"), *aff'd sub nom. Khan v. Fernandez-Rundle*, 287 F. App'x 50 (11th Cir. 2007); *see also Brannon*, 2011 WL 13113270, at *8 (claim for injunctive relief survived where plaintiff alleged that the "ongoing" and "continu[ing]" injury was that plaintiff was being retaliated against). Thus,

upon review, the Court concludes that Green's request for injunctive relief is not subject to dismissal.[6]

### D. Punitive Damages

Finally, the Official Defendants argue that Green's request for punitive damages should be stricken. Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," and grants broad discretion in making this determination. Fed. R. Civ. P. 12(f); *see also Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318-19 (S.D. Fla. 2005); *Williams v. Eckerd Fam. Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995). Under Rule 12(f), "[a] motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010) (citation omitted) (internal quotation marks omitted); *see also Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2015 WL 1566398, at *1 (S.D. Fla. Apr. 8, 2015) (same); *BB In Tech. Co. v. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (same).

Section 1983 contemplates the availability of punitive damages "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others." *Wright v. Sheppard*, 919 F.2d 665, 670 (11th Cir. 1990) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). For the reasons set forth above, the Complaint alleges sufficient facts to support the claim of intentional wrongdoing required for punitive damages. The Official Defendants, however, maintain that Green's claim for punitive damages should be stricken because a government entity is immune from punitive damages under

---

[6] Even if the Court were to find that Green had not sufficiently pled a claim for injunctive relief, dismissal of the Complaint would not be warranted because Green has also sought declaratory relief.

18

42 U.S.C. § 1983. ECF No. [17] at 13. Yet, a close review of the Complaint reveals that Green's claim for punitive damages is asserted only against Defendant Finkelstein. Indeed, the allegations in support of Green's punitive damages claim speak only to the conduct of Defendant Finkelstein, and not the Official Defendants. ECF No. [1] ¶¶ 8, 10, 18, 23. Additionally, in her Response, Green does not maintain that punitive damages are available against a government entity, and instead cites to Eleventh Circuit precedent holding that § 1983 contemplates the availability of punitive damages against an individual defendant, such as Defendant Finkelstein. *See Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985). By virtue of her Response, Green effectively concedes that she has not asserted a claim for punitive damages against the Official Defendants, and that such damages are likewise not recoverable. For the foregoing reasons, the Official Defendants' motion to strike Green's claim for punitive damages is denied as moot.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Official Defendants' Motion, **ECF No. [17]**, is **DENIED**.
2. Defendant Finkelstein's Motion, **ECF No. [19]**, is **DENIED**.
3. Defendants shall file an Answer to the Complaint, ECF No. [1], **by no later than February 17, 2021**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 3, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 20-cv-62160-BLOOM/Valle

Copies to:

Counsel of Record